FILED

2005 Sep-15  PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **PAMELA TUCKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action Number** |
| **v.** | ) | 7:04-cv-1353-UWC |
| | ) | |
| **AUTOZONERS, INC., and OSCAR** | ) | |
| **HURST,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT**

In this case brought under 42 U.S.C. § 2000e *et seq.* ("Title VII"), Plaintiff

Pamela Tucker ("Tucker") claims that Defendants AutoZoners, Inc. ("AutoZoners"), and

its employee, Oscar Hurst, Jr. ("Hurst"), terminated Plaintiff because of her sex, and that

Defendants' actions created a hostile work environment. Plaintiff also brings common

law claims against Hurst for battery and for the intentional infliction of emotional

distress.

The Defendants have separately moved for summary judgment on Plaintiff's Title

VII and intentional infliction of emotional distress claims. Defendant Autozoners'

Motion for Summary Judgment is due to be DENIED. Defendant Hurst's Motion for

Summary Judgment is due to be GRANTED as to Plaintiff's Title VII claim and her

claim for the intentional infliction of emotional distress. Hurst's motion is to be DENIED

1

as to Plaintiff's battery claim. (Doc. 20.)

## STATEMENT OF FACTS

Plaintiff first began working as a customer sales representative for AutoZoners in June of 2002, at its Greensboro Avenue store in Tuscaloosa, Alabama.  Plaintiff voluntarily resigned from this position in September of 2002; however, AutoZoners rehired Plaintiff on December 22, 2002, as a Commercial Sales Driver.  As a Commercial Sales Driver, Plaintiff's chief responsibility was to deliver parts to commercial customers.

AutoZoners has an anti-sexual harassment policy, which is set forth in its Employee Handbook ("Handbook").  In the event harassment occurs, the Handbook directs as follows:

> "If you believe that you have been harassed or think that another AutoZoner has been harassed, tell your manager at once, or report the situation directly to a member of management, human resources, or the Employee Relations Manager.  You can also contact the AutoZoners Relations Department at extension 7250."

(Def.'s Ex. 8, Employee Handbook  22.)

The Handbook also provides that "[a]ny AutoZoner who receives a complaint or becomes aware of a sexual harassment situation is required to report the allegation to management immediately.  Management will thoroughly investigate each reported allegation as confidentially as possible." (*Id*. at 23.)

In addition to AutoZoners' policy against sexual harassment, the company also had a "personal relationship" policy, which prohibited, among other things, managers and

employees from entering into "dating or personal/social relationships" with one another. (Def.'s Ex. 8, Employee Handbook  24-25.)  The Handbook states that the personal relationship policy is designed to prevent favoritism among employees.

Following her second hiring, Plaintiff signed a form acknowledging that it was her responsibility to read and understand the policies in the AutoZone Employee Handbook. Additionally, on December 17, 2002, Plaintiff signed a form acknowledging her participation in an AutoZoner training session on sexual harassment.

During her employment with AutoZoners, Plaintiff dated another AutZoners employee, Stephen Carter ("Carter").  Carter worked as a Commercial Specialist and was a member of the management team.

Plaintiff claims that during August of 2003, she approached her Store Manager, Oscar Hurst, Jr., and inquired about the possibility of receiving a pay raise.  Plaintiff claims that Hurst responded by groping her crotch, and asking her  "you know what a girl around here can do to get a raise?"  Plaintiff claims that she reported the incident only to Emmanuel Allen, a Parts Service Manager, and that he nor any other member of management responded to her complaint.

Plaintiff testified in her deposition that Hurst is the only employee whom she claims sexually harassed her.

Approximately two months following the alleged touching, on October 21, 2003, Autozoners fired Plaintiff.  Plaintiff's Store Manager and alleged harasser, Oscar Hurst,

signed Plaintiff's termination paperwork.  As grounds for dismissal, the termination

paperwork listed as follows: violation of AutoZone Relationship Policy, loss of

confidence, and conduct detrimental to AutoZone.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no

genuine issue as to any material fact and that, based upon the undisputed facts, the

movant is entitled to judgment as a matter of law.  *See Earley v. Champion Int'l Corp.*,

907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of

'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which the moving party believes demonstrate the absence of a

genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When ruling on a motion for summary judgment, the court must view the facts in a

light most favorable to the non-moving party.  *See, e.g., Raney v. Vinson Guard Serv.*,

120 F.3d 1192, 1196 (11th Cir. 1997).  "The district court should 'resolve all reasonable

doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences

. . . in his favor  . . . ." *United States v. Four Parcels of Real Property*, 941 F.2d 1428,

1437  (11th Cir. 1991).  "All doubts as to the existence of a genuine issue of material fact

must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).  Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact.  *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

## DISCUSSION

### I.    AutoZoners' Motion for Summary Judgment

### A.    Tangible Employment Action Claim

For adverse "tangible employment" actions based upon sex, a plaintiff must prove that a supervisor engaged in harassment which resulted in an adverse tangible employment action.  *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998);  *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).  It is well-settled that a discharge is an adverse employment action.  *Ellerth*, 524 U.S. at 761.  Unlike claims for hostile work environment, which are not subject to affirmative defenses, defendants are automatically held vicariously liable for claims of tangible employment action.  *Id.* at 763; *Faragher*, 524 U.S. at 790.  In order to prevail on a tangible employment action claim, the plaintiff must prove that she suffered an adverse employment action *because of* her sex.  *Walton v. Johnson & Johnson, Servs., Inc.*, 347 F.3d 1272, 1281 (11th Cir.  2003).

AutoZoners argues that Plaintiff has failed to prove that a tangible employment action was taken as a result of her refusal to accede to sexual demands, for two reasons.

5

(Def.'s Br.,  p. 12.)

First, AutoZoners asserts that it fired Plaintiff  because she violated the company's "personal relationship" policy by dating a manager.  For support, AutoZoners points to the declaration of Joe Sellers, Regional Manager.  Sellers testified that Plaintiff was fired for violating the personal relationship policy, and that  her sex did not affect his decision to fire her.  (Def.'s Br. at Ex. E, Sellers Decl. ¶¶ 13-14.)   Sellers also testified that Hurst was not involved in the investigation, recommendation, or decision to terminate Plaintiff. (*Id*.)  Sellers also testified that Plaintiff admitted to violating the personal relationship policy. (*Id*. at ¶¶ 9, 10, 12.)   The record shows that Plaintiff testified to dating a manager, Stephen Carter, on at least two occasions during her employment with AutoZoners.  (Pl.'s Dep., pp. 115-139.)

Second, AutoZoners states that Plaintiff is unable to establish an adverse tangible employment action because after the alleged touching, Plaintiff received a pay raise.

In opposition, Plaintiff argues that the record reflects evidence upon which a jury could find that she rebuffed Hurst's advances, and that Hurst participated in the decision to fire Plaintiff.  As to rebuffing Hurst's offensive touching, the record shows that Plaintiff testified she moved Hurst's hand off of her crotch and left immediately thereafter.  (Pl.'s Dep. 78:2.)  As to the issue of whether Hurst participated in Plaintiff's firing, the record shows that Hurst signed Plaintiff's termination paperwork.  (Pl.'s Ex. 11.)

The factual disputes are clear.  The record contains sufficient evidence upon which reasonable minds could find that Plaintiff was fired because she rebuffed his sexual advances.  Accordingly, AutoZoners is not entitled to summary judgment.

### B.      Hostile Work Environment Claim

In order to state a *prima facie* case of hostile work environment for sexual harassment, a plaintiff must prove the following: (1) membership in a protected group; (2) subjection to unwelcome sexual harassment, such as sexual advances, or requests for sexual favors; (3) the harassment was based on the employee's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and a basis for holding the employer liable.  *Mendoza v. Borden, Inc.* 195 F.3d 1238, 1245 (11th Cir. 1999).

Establishing that the alleged conduct was severe or pervasive includes both an subjective and objective component.  *See id*.  As to the subjective component, the employee must subjectively perceive the harassing behavior as being sufficiently severe or pervasive to alter the terms or conditions of her employment.  *Id*.  As to the objective component, the work environment must be such that a reasonable person in the plaintiff's position would find it hostile or abusive.  *Id*.  When reviewing the objective component, courts consider the following four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job

performance.  *Id.*

Once a plaintiff pleads a *prima facie* case of hostile environment based on sexual harassment, a defendant may assert affirmative defenses to preclude employer liability. To establish an affirmative defense, the defendant must prove that (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the defendant, or to avoid the harm otherwise.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  The Eleventh Circuit has identified two elements that plaintiffs must show in order to prove they reasonably used the complaint procedures.  First, the plaintiff must have reported the incident to an "appropriate person." *Madray v. Publix Supermarkets*, 208 F.3d 1290, 1300 (11th Cir. 2000).  Second, the report must have provided the defendant with adequate notice of sexual harassment. *Frederick v. Sprint/United Mgmt.*, 216 F.3d 1305, 1314 (11th Cir. 2001).

AutoZoners argues that it is entitled to summary judgment as to Plaintiff's hostile work environment claim because (1)  the record establishes that the alleged harassment was not sufficiently severe or pervasive, and (2) there is no employer liability.

AutoZoners first contends that Hurst's alleged groping was not severe, and did not interfere with Plaintiff's job performance.  (Def.'s Br. 15.)  AutoZoners relies upon Plaintiff's testimony that she was able to do her job throughout her employment and she thought she did it well.  (Pl.  Dep.  57:9-10.)

8

Second, AutoZoners contends that the alleged touching is not severe or pervasive enough to establish a traditional hostile work environment claim.  (Def.'s Br. 16.)   For support, AutoZoners points to Plaintiff's deposition testimony and cites *Gupta v. Florida Board of Regents*,  212 F.3d 571 (11th Cir. 2000), and *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999).

AutoZoners first points to Plaintiff's deposition, wherein she testified that the touching lasted only for a "split second," and that Hurst never touched her again or made any other inappropriate sexual comments.  AutoZoners' reliance on Plaintiff's testimony as to the brevity of the touching is disingenuous, for the record shows that when asked how long Hurst's hands remained on her crotch,  Plaintiff testified, "*Until I moved it*.  Just a split second."  (Pl.'s Dep. 77:20-25, 78:1-4)(emphasis added.)

 AutoZoners also cites *Gupta v. Florida Board of Regents*,  212 F.3d 571 (11th Cir. 2000),  for the proposition that the touching in this case was not sufficiently severe or pervasive.  In *Gupta*, the Eleventh Circuit found that the alleged conduct was not sufficiently severe or pervasive although the plaintiff alleged several incidents of sexual misconduct, including the following: a supervisor's (1) placing his hand on plaintiff's thighs, (2) touching the hem of plaintiff's dress, (3) commenting that plaintiff looked beautiful, and (4) asking the plaintiff to lunch. *Gupta,* 212 F.3d at 583-86.  AutoZoners argues that Hurst's single act of groping does not rise to the level of severe or pervasive conditions, in light of the fact that under *Gupta*, the plaintiff alleged *several* incidents of

9

harassment, yet the Eleventh Circuit ruled the plaintiff did not have a valid claim.
AutoZoners' reliance on *Gupta* is misplaced, for while the case at bar involves only a
single incident of sexual harassment, a supervisor's groping of a subordinate female
employee's crotch is an allegation that is far more severe, physically threatening, and
humiliating than the several claims made in *Gupta*.

Likewise, this case is also distinguishable from *Mendoza v. Borden, Inc.*, 195 F.3d
1238, 1244 (11th Cir. 1999), wherein the Eleventh Circuit ruled the plaintiff did not have
a hostile work environment claim because she failed to prove the conduct was either
physically threatening or humiliating where she alleged a single incidence of her
supervisor's rubbing his hip against plaintiff's hip. *Mendoza*, 195 F.3d at 1248. As
discussed above, Hurst's groping is clearly more severe and pervasive, and is sufficient to
establish a valid hostile work environment claim.

Second, AutoZoners argues that even if Hurst's alleged conduct constitutes sexual
harassment, AutoZoners is entitled to assert the affirmative defenses under *Ellerth* and
*Faragher*. AutoZoners argues that it has exercised reasonable care to prevent sexual
harassment, by implementing an anti-sexual harassment policy, including providing a 1-
800 number to employees to report incidents of harassment. AutoZoners also argues that
Plaintiff acted unreasonably by failing to call the 1-800 number to report the harassment,
and by failing to report the alleged harassment while she was employed.

The record shows that Plaintiff testified to knowing of AutoZoners' policy against

sexual harassment, but not knowing of or calling the 1-800 number. (Pl.'s Dep 32:1-25.)

Plaintiff denies that she failed to follow the policy of reporting sexual harassment. (Pl.'s Br. 30.)  For support, Plaintiff testified that she informed Emmanuel Allen, a manager subordinate to Hurst, of Hurst's sexual harassment.  (Pl.'s Dep. 81-84.)  Plaintiff argues that she complied with the Employee Handbook's directive to "discuss the problem with the supervisor or *any other member of management* as soon as possible," following an incidence of sexual harassment.  (Pl.'s Ex. 4 at 27) (emphasis added).

The record is clear that Allen did not take further action to further report the sexual harassment; this was in clear violation of the Employee Handbook which creates a duty upon any member of management receiving notice of sexual harassment to cause an investigation of the incident.  (Def.'s Ex. 8, Employee Handbook  22)(stating "[m]anagement will thoroughly investigate each reported allegation as confidentially as possible").

Because the record shows that Plaintiff informed another manager of Hurst's harassment, but that manager was subordinate to that of her alleged harasser, reasonable minds could differ as to whether Plaintiff acted reasonably in utilizing AutoZoners' corrective procedures.  On the other hand, the record contains evidence upon which a jury could impose employer liability, as Plaintiff reported the incident to a manager who did not cause an investigation of the harassment, as required by the Employee Handbook. Accordingly, AutoZoners is not entitled to summary judgment as to Plaintiff's hostile

work environment claim.

## II.    Hurst's Motion for Summary Judgment

### A.  Title VII Claim

There is no individual liability under Title VII, for the relief provided thereunder is charged against the employer, not the individual whose actions would constitute a violation of the Act. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Thus the only proper individual defendants are supervisory employees acting in their capacity as agents for the employer. *Id*.

Defendant Hurst argues that he is entitled to summary judgment as to Plaintiff's Title VII claim, because Title VII does not provide for individual liability.

Plaintiff did not file a response in opposition to Hurst's motion for summary judgment. Nonetheless, the law is clear that an individual may not be held liable under Title VII. Accordingly, Defendant Hurst is entitled to summary judgment as to Plaintiff's Title VII claim.

### B.  Tort of Outrage Claim

In *American Road Service Company v. Inmon*, the Alabama Supreme Court first recognized the tort for "intentional infliction of emotional distress," or as it is commonly known as, the "tort of outrage." 394 So. 2d 364 (Ala. 1980). The tort of outrage permits recovery where the defendant's conduct is so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency, and to be regarded as atrocious

and utterly intolerable in a civilized society. *Am. Road Serv. Co.,* 394 So. 2d at 365. In order to prevail on a tort of outrage claim, the plaintiff must prove that the defendant's conduct was (1) intentional or reckless; (2) extreme and outrageous, and (3) caused emotional distress so unreasonable that no person could be expected to endure it.

Hurst next argues that Plaintiff has not provided the Court with any evidence to substantiate her tort of outrage claim. Hurst's argument is convincing. In her deposition, Plaintiff did not testify to suffering from severe emotional distress as a result of Hurst's conduct. (*See* Pl. Dep.) However, in her affidavit, Plaintiff testified that she found Hurst's conduct "very offensive and hurtful." (Plaintiff Aff. 2.) Plaintiff's own affidavit testimony as to the offensiveness and hurtfulness of Hurst's conduct is insufficient to prove that she suffered emotional distress that was so unreasonable that no person could be expected to endure it. Aside from her affidavit, Plaintiff proffers no other evidence to prove she suffered from severe emotional distress. While Hurst's conduct was clearly inappropriate, it does not give rise to a claim of intentional infliction of emotional distress and rise to a level of outrage. Thus, Hurst is entitled to summary judgment as to Plaintiff's tort of outrage claim.

### C.     Battery Claim

As to Plaintiff's claim for battery, the record includes Plaintiff's deposition wherein she testified that Hurst touched her crotch area without consent. The record also contains Hurst's deposition testimony wherein he denied touching Plaintiff. The factual

13

conflict is clear, and this is a question well suited for a jury.  Accordingly, Hurst's motion

for summary judgment as to Plaintiff's claim for battery is due to be DENIED.


## CONCLUSION

For the reasons stated above, Defendant AutoZoners' Motion for Summary

Judgment is due to be DENIED.  Defendant Hurst's Motion for Summary Judgment is

due to be GRANTED as to Plaintiff's Title VII claim and her claim for the intentional

infliction of emotional distress, and DENIED as to Plaintiff's battery claim.

Done this 15th day of September, 2005.


_____
U.W. Clemon
Chief United States District Judge